**Opinion issued July 7, 2015.**



In The

# Court of Appeals

### For The

# First District of Texas

———————————

**NOS. 01-14-00505-CR**
**01-14-00506-CR**
**01-14-00507-CR**

———————————

**DANIEL DESANTIAGO-CARAZA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 240th District Court**
**Fort Bend County, Texas**
**Trial Court Case Nos. 12-DCR-059402, 12-DCR-059524, 12-DCR-059902**

---

### MEMORANDUM OPINION

Appellant, Daniel DeSantiago-Caraza, pleaded guilty to aggravated

robbery,[1] aggravated assault,[2] and arson,[3] and, after a presentence investigation

---

[1]     Appellate court number 01-14-00505-CR, trial court number 12-DCR-059402.

report was prepared and a punishment hearing held, the trial court assessed punishment at 60 years' confinement for the aggravated robbery, 20 years' confinement for the aggravated assault, and 20 years' confinement for the arson. In a single issue on appeal, appellant contends he was denied due process because the trial court refused to consider the entire range of punishment and mitigating evidence. We affirm.

## BACKGROUND

At appellant's punishment hearing, Officer J. Thompson from the Rosenberg Police Department testified that on January 18, 2012, at approximately 3:30 a.m, he responded to a call involving a car fire. When he arrived, he assisted with security and then heard gunshots nearby. Thompson saw a gray Ford F150 pickup truck leaving the location and followed the truck until it stopped in front of appellant's stepfather's home. Thompson initiated a traffic stop and spoke with the driver, appellant. He ordered appellant and the passenger to lie face-down on the ground. Appellant asked Thompson to shoot and kill him. Specifically, appellant said he did not care about dying and asked Thompson "to blast him." During the detention, the passenger got up and fled. Because he had a "second subject now to deal with," Thompson shot appellant with his taser. Thompson testified that he

---

[2]     Appellate court number 01-14-00506-CR, trial court number 12-DCR-059524.
[3]     Appellate court number 01-14-00507-CR, trial court number 12-DCR-059902.

never found a weapon on appellant, and that the passenger was the person who had previously fired shots near the location of the burning car.

After Thompson's testimony, the following exchange took place between the trial court and the prosecutor:

> [TRIAL COURT]: All right. Thank you, sir. You are excused. Counsel, let me have you both at the bench. I don't know if you want this conversation on or off the record, but we have the defendant's nolo or guilty pleas, we have the plea sentence investigation report. Isn't the purpose of this hearing to put of record any disagreements as to what the PSI reports.
>
> [PROSECUTOR]: I don't think it's just that matter, Judge. I think what Mr.—and I—
>
> [TRIAL COURT]: I'm not going to spend an hour repeating all the testimony that was heard in the earlier case.
>
> [PROSECUTOR]: Judge, that's not the intent. But as I said earlier, we do have to establish a record should [appellant] choose to appeal—
>
> [TRIAL COURT]: Well, here's the—have we executed plea papers?
>
> [PROSECUTOR]: He has, Judge, as to the guilt/innocence.
>
> [TRIAL COURT]: Okay.
>
> [PROSECUTOR]: I guess what I'm saying, Judge, I think that certainly if there is other evidence that supports this defendant's involvement, and I think what—and [defense counsel] can stop me if I'm wrong, which is I believe that certainly while he has pled and in that regard the State of Texas doesn't distinguish readily between parties and principles. I believe that that's a very significant core of events.

[TRIAL COURT]: I just—my real concern is should [defense counsel] present and examine the witnesses. I presume he wants to refute some of what's in the PSI report.

[PROSECUTOR]: He might, Judge, but the burden still rests upon the State.

[TRIAL COURT]: Has the State met its burden by—by the—are you satisfied that you've got accurate, adequate plea papers that were drawn in these matters?

[PROSECUTOR]: Yes, we are satisfied with those. Yes, sir, we are.

[TRIAL COURT]: So what more do you need?

[PROSECUTOR]: Judge, I believe that the Court can consider, for example, when the victims testify the Court can consider his particular actions as they relate to the victim.

[TRIAL COURT]: Okay. Should we then confine what we're going to be testifying here about to this specific defendant's actions?

[PROSECUTOR]: We certainly can do that. And I think, Judge, that's what we were referencing his actions out there.

[TRIAL COURT]: Well, really 10 percent of this focused on that. It seems the rest was just totally repetitive with what we heard in the trial.

[PROSECUTOR]: And, Judge, I understand it's repetitive to the Court, but it's not repetitive to a record. And so should this matter be appealed in its sum, then we just want to make sure that out of abundance of caution that we have a record that supports the plea, as well as a record that supports whatever the Court's imposition it sentences.

[TRIAL COURT]: Well, why isn't the plea established by the plea papers?

[PROSECUTOR]: I'm sorry, sir?

[TRIAL COURT]: Why isn't the plea not established by the plea papers?

[PROSECUTOR]: Judge, the plea itself is in terms of the guilt/innocence, but in terms of his particular involvement, I don't believe that the plea papers indicate—

[TRIAL COURT]: Well, why did he execute papers of they didn't involve him?

[PROSECUTOR]: I didn't say—I didn't say that they didn't involve—the level of his involvement, perhaps I should have been more clear. The level of his participation. If the Court doesn't want to hear from those witnesses, we certainly won't present them. But we certainly want to have enough to show if they raise—if they're raising, which I believe that they will, that he's just a party, that his involvement is minimal, and, therefore, we think that he should get a lenient sentence, I think that we would be entitled to offer evidence that shows that his participation was more than just minimal.

[TRIAL COURT]: Okay. How many witnesses are we going to have?

[PROSECUTOR]: Judge, I could probably cut out two more. So I would say seven or eight.

[TRIAL COURT]: So you're going to have eight hours' worth of testimony to back up a guilty plea?

[PROSECUTOR]: No, Judge.

[TRIAL COURT]: You've killed an hour already.

[PROSECUTOR]: Judge, I think we started at 1:30, it's 2:10. And so I think he was one of the meatier witnesses, quite frankly.

[TRIAL COURT]: Let's go along with it then. But I'm not sure we're making good use of the time, and I'm not sure we're addressing any of [defense counsel's] concerns.

5

[PROSECUTOR]: Well, I don't know all of his concerns. He can do that through cross-examination.

[DEFENSE COUNSEL]: We'll—we'll get there. But for right now I think we should limit as much as we can.

[PROSECUTOR]: But the State has a right to put on our case.

[TRIAL COURT]: Do you [have] a right—

[PROSECUTOR]: And we're asking the Court to consider the full range of punishment.

[TRIAL COURT]: You have presented a plea packet. And the Judge has found that to be sufficient. Obviously, your signature is real legible, but other than that, it's fine.

[PROSECUTOR]: That's [sic] be yours and Ms. Patel's.

[TRIAL COURT]: These lawyers don't know how to write anymore. But I think—my guess is there's been a satisfact[ory] plea packet done through your plea of guilty or no contest. So guilt/innocence is not an issue, is it? Or is it?

[PROSECUTOR]: It is not. That's correct, Judge. You're correct.

[TRIAL COURT]: So—of course I'm correct. But I guess my concern is can we confine it to those matters that are disputed. Of course, you don't really know what's disputed so maybe a minimal presentation on your part, then followed by [defense counsel's] cross-examination would tend to focus what's in issue. Because I—I either know or am going to know everything that's in these packets here, but that's going to take a little time as well.

[PROSECUTOR]: Okay.

[TRIAL COURT]: But go ahead and let's just see how it goes.

[PROSECUTOR]: And I'll certainly speed things up, Judge.

6

[TRIAL COURT]: Please.

[PROSECUTOR]: And see if we can't cut out some things.

[TRIAL COURT]: All right.

Thereafter, the State presented an additional seven witnesses who presented evidence that appellant and his co-actor, a 14-year-old juvenile, had participated in a crime spree on the night of the offenses that involved a car-jacking, several armed robberies, and an arson. Multiple witnesses testified that they were shot at during the robberies, and at least one was injured. The crime spree culminated in the arrest detailed by Officer Thompson.

The defense presented the testimony of appellant's stepfather, and appellant testified on his own behalf. At the conclusion of the hearing, the trial court stated, "All right, counsel may I hear from each of you briefly in argument since I've read all of the instruments that have been filed and attentively listen[ed] to you." After hearing arguments by counsel, the trial court assessed punishment at 60 years' confinement for the aggravated robbery and 20 years' confinement each for the aggravated assault and the arson.

## DUE PROCESS

In his sole issue on appeal, appellant contends that he "suffered a Due Process Violation when the trial court refused to consider the entire range of

punishment and refused to consider relevant evidence that mitigated appellant's punishment."

### *Applicable Law*

Due process requires a neutral and detached judicial officer. *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 1762 (1973); *Jaenicke v. State*, 109 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). "A court's *arbitrary* refusal to consider the entire range of punishment would constitute a denial of due process . . . ." *McClenan v. State*, 661 S.W.2d 108, 110 (Tex. Crim. App. 1983) (emphasis added). Additionally, a court denies a defendant due process when it refuses to consider the evidence or when it imposes a predetermined punishment. *Howard v. State*, 830 S.W.2d 785, 787 (Tex. App.—San Antonio 1992, pet. ref'd). In the absence of a clear showing to the contrary, a reviewing court will presume that the trial court was neutral and detached. *See Steadman v. State*, 31 S.W.3d 738, 741–42 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). "Absent a clear showing of bias, a trial court's actions will be presumed to have been correct." *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006); *see Steadman*, 31 S.W.3d at 741.

### *Analysis*

Appellant complains that the "trial court expressed its opinion that it did not need to hear evidence from the offenses in this case[,]" and that the trial court

made such statement "before [a]ppellant had a chance to present mitigating evidence, including overwhelming evidence that [a]ppellant did not remember the events in question and acted largely as a party." Appellant also complains that the trial court "refused to consider evidence of [a]ppellant's mental health history, his abusive childhood, and the recent death of a very close friend which affected his mental state prior to commission of the offenses." The State responds that appellant was afforded "a full hearing to present evidence on his behalf and there is nothing in the record to indicate that the trial court did not consider the evidence presented at the hearing." We agree with the State.

While the trial court did question *the State* about why it needed to go into such detail about the facts of the underlying case, the record supports the conclusion that the trial court was not refusing to hear mitigating evidence, but was actually attempting to make sure that *appellant's counsel* had sufficient opportunity to address any issues appellant had with the PSI. This is reflected in the trial court's statement, "Let's go along with it then. But I'm not sure we're making good use of the time, and I'm not sure we're addressing any of [defense counsel's] concerns." Defense counsel agreed that his concerns could be addressed on cross-examination and with the trial court's statement that "[f]or right now I think we should limit [the State's exploration of the details of the case] as much as we can."

There is nothing in the record to show that the trial court excluded or refused to consider any mitigating evidence offered by either side. To the contrary, it heard from at least nine witness and considered the PSI that was admitted during the hearing, and, in doing so, stated that it had "read all of the instruments that have been filed and attentively listen[ed] to you." Accordingly, appellant has failed to rebut the presumption that the trial court was neutral and detached and that its actions were correct. *See Steadman*, 31 S.W.3d at 741-42.

We overrule appellant's sole issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).